OPINION OF THE COURT
Robert L. Estes, J.
Defendant moves for several forms of relief by notice of motion dated March 19, 1993 and accompanying affidavits. The People answered by District Attorney’s affidavit sworn to March 31, 1993, accompanied by additional affidavits. The court has heard testimony offered by the parties in respect of defendant’s Sandoval application and concerning his claim that "the integrity of the Grand Jury was impaired * * * by *924 perjured testimony coerced * * * by the conduct of Investigator Fernandez.” The defendant moves, among other things, for an order dismissing the indictment on the ground that the Grand Jury proceeding is defective by reason of the investigator’s conduct, under CPL 210.20 (1) (c) and 210.35 (5).
MOTION TO DISMISS THE INDICTMENT
The defendant claims that the Grand Jury proceeding which resulted in his indictment was tainted because a State Police investigator, at the very threshold of the Grand Jury, intimidated a defense witness into testifying before the Grand Jury differently than the witness had testified at the preliminary hearing before the local criminal court and intended to testify to the Grand Jury.
Having examined a transcript of the testimony given before the Grand Jury, having heard and observed the witnesses produced at a preliminary hearing before the court, and having examined a transcript of the testimony of such hearing and considered the uncontradicted statements in the affidavits, the court makes the following findings of fact.
The defendant has consistently admitted striking the complainant and causing him injury, but has also consistently claimed that the striking was justified by self-defense, to prevent injury to himself when the complainant Wesley Hall (hereinafter Hall) threatened to strike the defendant with an object, referred to variously in these proceedings as a tire iron, tire handle, jack handle, or lug wrench.
After preliminary investigation of the incident by Trooper Jeffrey Moore, the investigation was adopted by BCI Investigator Robert Fernandez (hereinafter Fernandez) on November 29, 1992. Neither he nor Trooper Moore, nor any other investigator interviewed Garry Babcock (hereinafter Babcock) before the Grand Jury inquiry on January 12, 1993, though Babcock had testified on behalf of the defendant at a preliminary hearing before the Justice Court on December 17, 1992. At the time that he determined to interrogate Babcock in the District Attorney’s office on the date of the Grand Jury presentation, Fernandez had been told by one of the complainants that Babcock had testified at the preliminary hearing that Hall had something in his hand at the time he was struck by the defendant. Having been informed by a prosecution witness that Babcock had been seen in the hallway during the Grand Jury proceeding, Fernandez verified his presence in a separate *925 room, where Babcock was waiting after having arrived with the defendant, the defendant’s attorney, and a third witness brought by the defendant. Fernandez testified that his goal was to see the defendant indicted. He intentionally waited until the defendant and the defendant’s attorney left the waiting room and had entered the Grand Jury room where the defendant gave his testimony, and he then requested that Babcock accompany him to the District Attorney’s office for questioning.
Babcock accompanied Fernandez to the District Attorney’s office, where Fernandez closed the door, leaving Babcock alone with Fernandez and Trooper Moore. Babcock was obviously nervous, constantly crossing his legs, and constantly being instructed by Fernandez to uncross his legs during the interrogation. When asked to relate his observations on the evening of the incident, Babcock told Fernandez that he had seen Hall holding a tire iron in his hand after emerging from the truck in which he arrived at the defendant’s property, and then saw him raise it toward the defendant in a threatening manner before handing the defendant a metal pipe at the defendant’s request. It is evident to this court that Babcock intended to so testify to the Grand Jury. During the course of the ensuing interrogation, Fernandez, trained in interrogation techniques, led Babcock to believe that if he testified to the Grand Jury that he saw a tire iron in Hall’s hand, he would be prosecuted for perjury, and could be sent to prison, and the defendant would go free. Babcock later told his girlfriend that Fernandez had "scared the crap out of him and thought he was going to prison.”
Notwithstanding the claims of Fernandez and Trooper Moore that Fernandez had merely stressed the importance to Babcock of telling the truth, Fernandez conceded telling Babcock that they had a witness who had told the police that there was no tire iron, and that Babcock could be subject to a perjury charge. Fernandez’ answering affidavit does not relate his mention of a possible perjury charge. Fernandez also testified that he told Babcock there was no tire iron in the truck, and that the police were unable to find a tire iron in the truck in the investigation. In fact, no search was ever made for a tire iron. Although Fernandez testified that he asked Trooper Moore whether he had looked for the tire iron, and that Trooper Moore had said "yes, it wasn’t there”, Trooper Moore testified that he never searched for the tire iron.
*926 When Fernandez finished his interrogation of Babcock, he did not tell Babcock that he was free to leave the District Attorney’s office. Instead, he waited until the District Attorney returned to his office after the defendant’s testimony, and told the District Attorney that Babcock would testify that Hall had no tire iron nor any other object in his hand, whereupon the District Attorney took Babcock into the Grand Jury room to testify.
It is clear to the court that, but for the interrogation by Investigator Fernandez, Babcock intended to testify to the Grand Jury, as he had during the preliminary hearing, that he observed Hall get out of the truck with something in his hand, before the defendant struck Hall. In fact, he testified that Hall got out of the truck "and he reached down and it looked like he brought something up,” in response to a question by the District Attorney. In response to the District Attorney’s later direct question whether Hall ever had anything in his hands, he answered that "It looked like when he was getting out he reached behind the seat and pulled something out, it could have been his fist or something to threaten him with, but I didn’t see any object in his hands at any time.” That the issue was important to the grand jurors, themselves, is apparent from the following exchanges.
"grand juror: You could see Wesley’s hand and he had nothing in it?
"the witness: He came up like this (indicating) and there was a motion, he came out with his hand and I thought he had something in it, I am not sure, but he brought his hand up. * * *
"grand juror: Did Wesley have anything in his hand when he brought it up behind him?
"the witness: He brought it up like this (indicating) and I couldn’t tell, no way.”
It is impossible for the court to speculate as to what further questions the Grand Jury might have asked, or what action they might have taken, had Babcock testified concerning his impressions, unfettered by fear of being prosecuted by Fernandez for testifying to events as he recalled them and was prepared to relate them. It is unnecessary, however, for the court to so speculate.
The conclusion which unmistakably emerges from this hearing is that on the very threshold of a witness’ Grand Jury testimony, the witness was interrogated by a State Police *927 investigator, and was intimidated into changing his intended testimony. Intimidation of witnesses whose testimony might have been helpful to the defendant is one of many tactics deplored by the laws of this State. Such tactics were specifically condemned in People v Grafton (115 AD2d 952) wherein the Court affirmed dismissal of an indictment. Such police "horse-shedding” of witnesses during the pendency of Grand Jury proceedings so corrupts the integrity of the proceedings as to render them defective within the meaning of CPL 210.35 (5). Arrogating to himself the truth-finding process, which is the province of the independent Grand Jury, Fernandez engaged in conduct which might be considered coercion as defined at section 135.60 (4) of the Penal Law.
The defendant does not contend that the District Attorney was aware of Fernandez’ conduct, and there is no evidence in the record to support any inference of misconduct by the District Attorney.
Nonetheless, Fernandez’ conduct so impaired the defendant’s right to a fair presentation to the Grand Jury that the indictment will be dismissed, on the grounds that the Grand Jury proceeding was defective, within the meaning of CPL 210.20 (1) (c) and 210.35 (5). The defendant shall submit an order.
The other issues raised by the defendant’s papers have been rendered academic by this determination, and need not be addressed by the court. Except for this decision and the accompanying order, the court shall retain in chambers the motion papers and other documents relating to the case, pending such further applications as may be timely and properly made by the parties.